**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

LARA JEANETTE M.,

                                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

No. 5:24-CV-1365
(AMN/PJE)

---

**APPEARANCES:**

Hiller Comerford Injury & Disability Law
6000 North Bailey Avenue- Suite 1a
Amherst, New York 14226
Attorneys for plaintiff

Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**OF COUNSEL:**

JUSTIN M. GOLDSTEIN, ESQ.
MARY ELLEN GILL, ESQ.

GEOFFREY M. PETERS, ESQ.

**PAUL J. EVANGELISTA
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Lara Jeanette M.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3) seeking review of a decision by the Commissioner of the Social Security

Administration ("the Commissioner") denying her application for supplemental security

---

[1] This matter was referred to the undersigned for Report-Recommendation and in accordance with General Order 18 and N.D.N.Y. L.R. 72.3(e).

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

income ("SSI") benefits. *See* Dkt. No. 1. Plaintiff moves for the Commissioner's decision to be vacated, and, in the alternative, remanded for further proceedings. *See* Dkt. No. 13. The Commissioner moves for the decision to be affirmed. *See* Dkt. No. 15.[3] Plaintiff filed a reply. *See* Dkt. No. 16. For the following reasons, it is recommended that the Commissioner's cross-motion be granted, plaintiff's cross-motion be denied, and the Commissioner's decision be affirmed.

## I. Background

On December 27, 2022, plaintiff filed a Title XVI application for SSI benefits, alleging a disability onset date of December 30, 2021. *See* T. at 165-74.[4] On May 25, 2023, the Social Security Administration ("SSA") denied plaintiff's claim. *See id*. at 73-81. On May 29, 2023, plaintiff sought reconsideration, which the SSA denied on July 7, 2023. *See id.* at 82-90. Plaintiff appealed and requested a hearing. *See id*. at 91. On May 7, 2024, a hearing was held before Administrative Law Judge ("ALJ") Mary Jane Pelton. *See id*. at 32-46. On May 17, 2024, the ALJ issued an unfavorable decision. *See id*. at 12-31. On September 18, 2024, the Appeals Council affirmed the ALJ's determination and the decision became final. *See id*. at 1-6. Plaintiff timely commenced this action on November 12, 2024. *See* Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

---

[3] This matter has been treated in accordance with General Order 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript. *See* Dkt. No. 9. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page. Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program, located at the header of each page.

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id*. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's

position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

### B.  **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  *Id.* § 423(d)(1)(A).  "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience."  *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)).  "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'"  *Id.* (citing 42 U.S.C. § 423(d)(3)).  "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'"  *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

Case 5:24-cv-01365-AMN-PJE   Document 17   Filed 02/25/26   Page 5 of 18

> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)).  "The plaintiff bears the initial burden of proof to establish each of the first four steps."  *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)).  "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere."  *Id*. (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

### III.  **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had "not engaged in substantial gainful activity since November 28, 2022, the application date." T. at 17.  At step two, the ALJ determined that plaintiff "has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, history

of right shoulder fracture with a partial supraspinatus cuff tear/impingement, adhesive capsulitis of the left shoulder, fibromyalgia, and obesity." *Id*. At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 19

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs. She can occasionally balance as defined by the SCO, occasionally stoop, kneel, or crouch, but never crawl. The claimant should avoid exposure to hazards such as unprotected heights and dangerous moving machinery.

T. at 20.[5] At step four, the ALJ determined that plaintiff "has no past relevant work." *Id*. at 24. At step five, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. at 25. Ultimately, the ALJ concluded that plaintiff "claimant has not been under a disability, as defined in the Social Security Act, since November 28, 2022, the date the application was filed." *Id*. at 26.

---

[5] Light work is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

6

## IV.  Discussion

### A.  The Parties' Arguments

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate Dr. Tarala's medical opinion.  *See* Dkt. No. 13-1 at 9-13.  More specifically, plaintiff argues that the ALJ failed to provide any rationale or explanation for rejecting all of Dr. Tarala's stated limitations.  *Id*. at 11 (quoting T. at 24). Plaintiff asserts that "[t]he ALJ cited only four pages of the record, for mild degenerative findings of the lumbar spine and a normal nerve conduction study.  While this arguably addressed limitations associated with Plaintiff's lumbar complaints, it does not address her cervical or shoulder complaints."  *Id*.  Plaintiff claims that the ALJ failed to consider her treatment records documenting consistent reports of cervical spine, neck, and shoulder pain, as well as abnormal results of physical examinations and imaging studies. *See id*. at 12.

Plaintiff also argues that the ALJ's reliance on Exhibit 16F in rejecting Dr. Tarala's opinion is misplaced.  *See* Dkt. No. 13-1 at 12-13.  Plaintiff acknowledges that Exhibit 16F contains a report documenting a normal nerve conduction study, but plaintiff contends that "the conclusion was not that [her] symptoms were unsubstantiated – but that they were resulting from fibromyalgia," a condition for which that Dr. Tarala provided treatment. *Id*.

The Commissioner argues that the ALJ's determination was supported by substantial evidence and should be affirmed.  *See generally* Dkt. No. 15.  The Commissioner acknowledges that the ALJ (1) "found that some physical limitations were

warranted in the RFC finding as Plaintiff reported trouble with lifting, standing, reaching, walking, and sitting due to fibromyalgia, arthritis (in her back), and shoulder trouble"; (2) "noted that imaging of Plaintiff's shoulder showed she had a near full-thickness rotator cuff tear[,] . . . [and] some examinations from the relevant period showed tenderness and/or a limited range of motion of the spine and right shoulder"; and (3) noted that plaintiff "complained of some gait trouble." Dkt. No. 15 at 7 (citing T. at 20-22). Nevertheless, the Commissioner argues that "the ALJ reasonably concluded that, although the record supported some of her complaints, Plaintiff's 'symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.'" *Id.* at 8 (quoting T. at 21).

Concerning Dr. Tarala's medical opinion, the Commissioner argues that Dr. Tarala's opinion was not supported by objective evidence and was inconsistent with the other evidence of record. *See* Dkt. No. 15 at 7, 11.[6] The Commissioner explains that "Dr. Tarala cited no objective medical findings in support of his overly restrictive opinion . . . And Dr. Tarala's own medical examinations – which the ALJ had earlier considered during a detailed discussion of the medical evidence ([T]. [at] 21-22) – showed Plaintiff had full strength in the arms and legs with no cognitive limitations noted." Dkt. No. 15 at 12 (citing T. at 414, 418-19, 810-11, 818, 852-54).

The Commissioner argues that the ALJ was not required to "individually reject[] each and every aspect of Dr. Tarala's opinion[,] . . . 'to state on the record every reason justifying a decision[,] or discuss every piece of evidence submitted.'" *Id.* at 13 (quoting

---

[6] The undersigned notes that the Commissioner raises many arguments explaining why the ALJ's decision is supported by substantial evidence, however, for the purposes of this matter, the undersigned will only address those arguments that are responsive to plaintiff's arguments. *See generally* Dkt. No. 15.

*Gauda v. Comm'r of Soc. Sec.*, No. 23-594, 2024 WL 886595, at *2 (2d Cir. Mar. 1, 2024) (summary order) (quoting *Brault*, 683 F.3d at 448)).  The Commissioner also argues that plaintiff conflates the supportability and consistency factors, and her argument generally amounts to a disagreement with the weight of the evidence. *See id*. at 14-16.

Concerning plaintiff's EMG testing results, the Commissioner argues that plaintiff "misrepresents both the relevance of the EMG testing and [] Dr. Tarala's opinion" because "Plaintiff's spine-related complaints were the cause of Plaintiff's nerve pain, not her fibromyalgia . . .  And Dr. Tarala explicitly cited to Plaintiff's diagnosis of degenerative disc disease in support of his opinion."  *Id*. at 15 (citing T. at 852, 904).

### B.  **Medical Opinions**

"For claims filed on or after March 27, 2017," an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources."  20 C.F.R. § 416.920c(a) (internal citation omitted).  Rather, medical opinions and PAMFs are evaluated based on their "persuasiveness."  *Id.*  In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors."  *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5).  "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'"  *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ

determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be."  20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'").  With regard to the "consistency" factor, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted."  *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448))

(internal quotation marks omitted).  "However, they must articulate how persuasive they found the medical opinions and PAMFs."  *Id*. (citing 20 C.F.R. § 416.920c(b)).  "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'"  *Id*. (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.")

### C.  Analysis

#### 1. James Tarala, M.D.

#### a.  Medical Opinion

Dr. Tarala is one of plaintiff's treatment providers.  *See* T. at 24.  He submitted a medical source statement on plaintiff's behalf dated March 14, 2024.  *See* T. at 852-54.  Dr. Tarala noted that he had been treating plaintiff every six weeks for the prior three months.  *See id*. at 852.  Dr. Tarala diagnosed plaintiff with the following conditions: generalized anxiety disorder, panic disorder, depression disorder, fibromyalgia, and degenerative disc disorder ("DDD").  *See id*. at 852.

Dr. Tarala reached the following opinions regarding plaintiff's physical limitations. Plaintiff was able to walk one city block "without rest or severe pain," sit for thirty minutes at a time, stand for fifteen minutes at a time, and "sit and stand/walk" for a total of four hours during an eight-hour workday. T. at 852. Plaintiff required "a job that permits shifting positions at *will* from sitting, standing, or walking." *Id*. Plaintiff needed to take unscheduled five-minute breaks from work every two hours. *See id*. at 853. Plaintiff had the physical ability to occasionally lift objects less than ten pounds and rarely lift objects weighing ten pounds. *See id*. She cannot lift anything heavier than ten pounds. *See id*. Plaintiff had the ability to occasionally look down, turn her head left or right, and look up. *See id*. Similarly, plaintiff has the ability to frequently hold her head in a "static position." *Id*. Plaintiff also had the ability to occasionally twist, stoop or bend, crouch, and climb stairs, as well as the ability to rarely climb ladders. *See id*. Plaintiff could grasp, turn, or twist objects with her hands; occasionally perform fine manipulations with her fingers; and occasionally reach over her head. *See id*. at 853-54. Finally, Dr. Tarala opined that plaintiff was likely to miss four days of work per month due to her impairments or the need for treatment, and plaintiff's pain or other symptoms would frequently "interfere with [her] attention and concentration needed to perform even simple work tasks." *Id*. at 854.

## b. **Analysis**

The ALJ noted the limitations listed by Dr. Tarala above, but concluded that Dr. Tarala's opinion was unpersuasive because "[i]t is not supported by the majority of objective medical findings of record and is not consistent with State agency findings or internal consultative examination (see Exhibit B7F at 17 showing mild degenerative findings in the lumbar spine and Exhibit B16F showing a normal nerve conduction study)."

12

T. at 24.   The ALJ explained that plaintiff's "allegations regarding the severity of her symptoms are inconsistent with the objective medical evidence of record" because records from 2022 indicated that plaintiff "experienced mostly mild to moderate symptoms from her impairments, which were effectively managed with conservative treatment," "[i]n 2023, the claimant's symptoms and impairments continued to be effectively managed," and "[r]ecords from 2024 indicate that the claimant continued to experience mostly mild to moderate symptoms from her impairments, which continued to be effectively managed with conservative treatment."   T. at 21-22 (citing T. at 277-79, 316-17, 390-92, 426, 483, 548-50, 572-78, 650-51, 714-15, 848, 892, 895-96, 902-03).

The Commissioner argues that the ALJ's determination is supported by substantial evidence.  *See* Dkt. No. 15 at 5-14.  The undersigned agrees.  First, the undersigned will address the ALJ's supportability analysis of Dr. Tarala's opinion.  The record contains many of Dr. Tarala's treatment records documenting plaintiff's reports of pain and physical limitations, as well as records from other specialists to whom Dr. Tarala referred plaintiff. *See generally* Dkt. No. 9.   However, Dr. Tarala does not cite any evidence upon which his opinion is based or proffer any explanation as to how he concluded plaintiff suffered from the limitations listed above.  *See* T. at 852-54.  Stated another way, there is nothing in Dr. Tarala's opinion to determine how he reached his conclusions.  *See Kathleen A.*, 2022 WL 673824, at *4 (quoting *Carmen M.*, 2021 WL 5410550, at *4).  Without that additional evidence or explanation, there is nothing in Dr. Tarala's opinion itself that calls into question the ALJ's treatment of his opinion.  *See* T. at 24, 852-54.

Plaintiff argues that she consistently suffered from cervical spine, neck, and shoulder pain; "had abnormal physical exam results associated with those complaints";

13

and "[i]maging showed abnormalities in Plaintiff's shoulders and cervical spine."  Dkt. No. 13-1 at 12 (citing  T. 279, 281, 312-313, 411, 414, 419, 432-33, 548-50, 635, 653-54, 707-08, 714-15, 718-19, 721, 774, 803, 806, 843, 892, 894-96, 902-08, 916, 914). However, Dr. Tarala's opinion does not cite or reference this information, and plaintiff's argument does not refute the ALJ's treatment of Dr. Tarala's opinion.  Plaintiff ignores the ALJ's discussion of her pain, limitations, and treatment records, including records from Dr. Tarala elsewhere in the decision.  *See* T. at 21-22.  As such, "plaintiff's argument[] amount[s] to a disagreement with how the ALJ weighed the evidence, which is within [the ALJ's] province to do." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (quoting *Nichole K. v. Comm'r of Soc. Sec.*, No. 1:23-CV-858 (EAW), 2024 WL 3022592, at *7 (W.D.N.Y. June 17, 2024) (internal quotation marks omitted); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *Tina W. v. Comm'r of Soc. Sec.*, No. 5:22-CV-15 (MAD), 2023 WL 157952, at *7 (N.D.N.Y. Jan. 10, 2023) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("It is not the Court's function to reweigh the evidence on appeal, only to 'decide whether substantial evidence supports the ALJ's decision.'")).

Plaintiff's argument also constitutes a "post-hoc rationalization [that] cannot serve as a substitute" for the support Dr. Tarala failed to articulate in his opinion.  *Wagner v. Comm'r of Soc. Sec.*, 435 F. Supp. 3d 509, 516 (W.D.N.Y. 2020); *see also Dana Marie M. v. Comm'r of Soc. Sec.*, No. 6:21-CV-0458 (GLS/CFH), 2022 WL 2314560, at *7 (N.D.N.Y.

June 28, 2022), *report and recommendation adopted,* No. 6:21-CV-0458 (GLS/CFH), 2022 WL 22210128 (N.D.N.Y. Sept. 28, 2022) (citing *Tammie S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1021 (ML), 2022 WL 356754, at *7 (N.D.N.Y. Feb. 7, 2022) ("Post hoc explanations do not constitute substantial evidence.")); *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (citation omitted) ("It is not sufficient to cite to 'some objective medical evidence in the record' and simply conclude that an opinion is [supported by and] 'consistent with other evidence in the file' rendering it 'persuasive.'").  Accordingly, the undersigned concludes that the ALJ did not err in her assessment of the supportability of Dr. Tarala's medical opinion.

Next the undersigned addresses the ALJ's rejection of Dr. Tarala's opinion as inconsistent with "a normal nerve conduction study."  T. at 24 (citing T. at 650-51). Although plaintiff frames this argument under the supportability prong, the ALJ's decision analyzes Dr. Tarala's opinion under the consistency prong.  *Compare* Dkt. No. 13-1 at 12-13, *with* T. at 24.

In September 2023, plaintiff underwent a nerve conduction study."  T. at 650-51. The examiner noted that plaintiff suffered from fibromyalgia, neck and low back pain that "[s]ometimes radiated [to her] upper right extremity," and "weakness in her hands."  *Id*. at 650.   Under "Physical Exam," the examiner stated, "Cervical range of motion limited bilaterally.  Motor exam is normal reflexes are brisk at the knee 1 at the biceps and triceps and ankle.  Normal sensory exam."  *Id*.  The examiner concluded that the study was "normal" and there was "[n]o evidence of acute or chronic denervation in the cervical or lumbar level" and "no evidence of large fiber radiculopathy."  *Id*.  The examiner opined that plaintiff's symptoms "are due to fibromyalgia," but "minor cervical or lumbosacral

rotation cannot be rule[d] out." *Id*. The examiner recommended that plaintiff undergo further clinical and radiographic testing. *See id*.

As stated *supra,* plaintiff argues that the ALJ erred in concluding that Dr. Tarala's opinion was inconsistent with the normal nerve conduction study. *See* Dkt. No. 13-1 at 12-13 (citing T. at 24, 852). Plaintiff contends that, "while the nerve conduction study was negative, the conclusion was not that Plaintiff's symptoms were unsubstantiated – but that they were resulting from fibromyalgia, not findings that would be apparent in a nerve conduction study." Dkt. No. 13-1 at 13. Plaintiff asserts that "[t]he ALJ's citation of this exam to reject Dr. Tarala's opinion, where Dr. Tarala treated Plaintiff for conditions including fibromyalgia . . . was error." *Id*. (internal citations omitted).

The undersigned disagrees. Plaintiff appears to misconstrue the ALJ's conclusion regarding her fibromyalgia and conflates the supportability and consistency factors. *See* 20 C.F.R. §§ 416.920c(c)(1)-(2); *Melissa W. v. Comm'r of Soc. Sec.*, No. 1:22-CV-891 (JGW), 2025 WL 1929917, at *9 (W.D.N.Y. July 14, 2025) (citing *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022)) ("Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record."). The ALJ did not reject plaintiff's fibromyalgia diagnosis or conclude that she does not suffer from any symptomology therefrom. Similarly, the ALJ did not conclude that plaintiff did not receive fibromyalgia treatment from Dr. Tarala. Rather, the ALJ concluded that the severity of plaintiff's limitations listed in Dr. Tarala's medical source statement were inconsistent with the limitations described by the nerve conduction examiner and the results of the nerve

conduction examination.  *See* T. at 24; 850-52. Although plaintiff claims that her symptoms are the result of fibromyalgia and "not findings that would be apparent in a nerve conduction study," she offers no evidence or support for this conclusion in the record or elsewhere.  Dkt. No. 13-1 at 13.  Therefore, undersigned concludes that the ALJ did not err in her assessment of the consistency of Dr. Tarala's medical opinion as it relates to the September 2023 nerve conduction examination.

Accordingly, the undersigned recommends that plaintiff's cross-motion be denied, the Commissioner's cross-motion be granted, and the ALJ's decision affirmed because substantial evidence supports the ALJ's decision.  *See Joseph J. B.*, 2024 WL 4217371, at *1; *Melissa W.*, 2025 WL 1929917, at *9; 20 C.F.R. §§ 416.920c(c)(1)-(2).

## V.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that plaintiff's cross-motion (Dkt. No. 13) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion (Dkt. No. 15) be **GRANTED**, and the Commissioner's decision be affirmed; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*,

17

984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.

Dated:  February 26, 2026
          Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge